UNITED STATES of America,
Plaintiff–Appellee,

v.

Joseph Blaine BAILEY, Defendant–
Appellant.

No. 90–4203.

United States Court of Appeals,
Tenth Circuit.

Dec. 27, 1991.

Jerome H. Mooney, III, Mooney & Associates, Salt Lake City, Utah, for defendant-appellant.

Paul M. Warner, Asst. U.S. Atty., Salt Lake City, Utah (Dee Benson, U.S. Atty., with him, on the brief), for plaintiff-appellee.

Before McKAY, Chief Judge, and HOLLOWAY, Circuit Judge, and DUMBAULD, Senior District Judge *.

DUMBAULD, Senior District Judge.

Defendant–Appellant Joseph Blaine Bailey, convicted under 18 counts[1] of land fraud[2] (in connection with his business in which he held himself out as an expert assisting investors wishing to obtain desert land in Nevada under the Desert Land Entry Act of March 3, 1877, 19 Stat. 377, as amended, 43 U.S.C. § 321 et seq.), interstate transportation of money obtained by fraud, filing false tax returns, and making false statements in order to obtain loans from federally insured financial institutions, raises three points in this appeal: appellant contends

(1) That appellant's *pro se* motion to sever Counts 1–13 from Counts 14–20 for misjoinder[3] under Rule 8(a) F.R.Cr.P. was erroneously denied;

(2) that the District Court should have interrogated the jurors to ascertain whether a newspaper story had been read by them;

(3) and that before the *pro se* trial one of appellant's prior attorneys had provided ineffective representation.

Finding no merit in these contentions, we affirm.

## I

With respect to joinder, Rule 8(a) provides:

Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

In applying this rule and determining whether the offenses charged are "of the same or similar character", or are

---

\* The Honorable Edward Dumbauld, United States Senior District Judge of the Western District of Pennsylvania, sitting by designation.

1. Counts 9 and 12 of the 20–count indictment were dismissed before trial. Counts 1–9 charged mail fraud in violation of 18 U.S.C. § 1341; Count 10 charged interstate transportation of money obtained by fraud, in violation of 18 U.S.C. § 2314; Counts 11–13 charged wire fraud in violation of 18 U.S.C. § 1343; Counts 14–17 charged filing false tax returns in violation of 26 U.S.C. § 7206(1); and Counts 8–20 charged making false statements to a federally insured financial institution in order to obtain loans, in violation of 18 U.S.C. § 1014.

2. Bailey's *modus operandi* was to charge a basic fee of $4000 (or whatever he thought the traffic would bear) to assist investors filing applications for land. None of his customers ever obtained any land. As a matter of fact the chance of pursuing such an application with success is negligible, since most of the desert land in Nevada having agricultural potential is privately owned already, and Bailey's enterprise can perhaps better be understood by analogizing it to that of the more familiar "Brooklyn Bridge salesman."

3. In the order of Magistrate Ronald N. Boyce of August 21, 1990, denying Bailey's motion to sever Counts 1–13 from Counts 14–20, it was noted "that defendant does not claim prejudicial joinder under Rule 14 F.R.Cr.P., but misjoinder [under Rule 8(a) F.R.Cr.P.]" See Appellee's Brief, Attachment A, p. 2.

"based on the same act" or on "acts or transactions connected together" or "parts of a common scheme or plan," the facts and circumstances of the particular case must be considered. This is a determination within the discretion of the trial court. Strong evidence of prejudice must be shown in order to establish abuse of discretion when the issue comes before an appellate court for review.

In *U.S. v. Cardall,* 885 F.2d 656, 667–68 (10th Cir.1989) we said:

> The decision whether to grant or deny severance is within the sound discretion of the trial court, and will not be disturbed on appeal unless there is an affirmative showing of an abuse of discretion.... To establish an abuse of discretion, a defendant must show that actual prejudice resulted from the denial[4].... Moreover, [i]n deciding on a motion for severance, the district court has a duty to weigh the prejudice resulting from a joint trial of co-defendants against the expense and inconvenience of separate trials.... Neither a mere allegation that defendant would have a better chance of acquittal in a separate trial, nor a complaint of the 'spillover effect' from the evidence that was overwhelming or more damaging against the co-defendant than that against the moving party is sufficient to warrant severance.[5]

■ Against the possibility of prejudice to a defendant must be weighed the benefit to the public from avoidance of unnecessary repetition and duplication of evidence, and the elimination of extra expense and time-consuming delays preventing achievement of speedy trial. *U.S. v. Shelton,* 736 F.2d 1397, 1409 (10th Cir.1984).

■ In the case at bar it is clear that the fraud counts and the tax counts are interrelated, and would require the testimony of the same witnesses concerning the amounts of money they paid Bailey, (for which they received no desert land, and upon which Bailey likewise hoped to pay no income tax). Likewise the same payments to Bailey would have to be used by the government to support the counts regarding interstate transportation of money obtained by fraud. On the counts charging false statements to federally insured lenders, the same payments would have to be falsified again (in the other direction) and the tax returns in the version submitted to lenders modified so as show sufficient income to justify the lenders in making loans to Bailey. (This would be true even if Bailey used the proceeds of the loans for personal purposes unrelated to the fictitious services for which he extracted the payments from his desert land customers).

Hence we conclude that joinder was permissible under Rule 8(a) and that no abuse of discretion has been demonstrated.

## II

■ The abuse of discretion standard likewise applies to the issue of improper influence of newspaper articles or other extraneous sources upon the ability of jurors to render a fair and unbiased verdict. *U.S. v. Thompson,* 908 F.2d 648, 650 (10th Cir.1990); *U.S. v. Jones,* 707 F.2d 1169, 1173 (10th Cir.1983); *U.S. v. Bradshaw,* 787 F.2d 1385, 1390–91 (10th Cir.1986).

Here, too, we find no abuse of discretion.

■ The trial judge referred to and scrupulously sought to comply with the *Thompson* case in particular.[6] He repeatedly offered Bailey the opportunity to file an affidavit stating with particularity just what the three unidentified women jurors in the elevator with him said about the news article and who they were. Bailey's stand-by counsel offered to assist in preparing the affidavit but Bailey failed, refused or ne-

---

**4.** As stated in *U.S. v. Petersen,* 611 F.2d 1313, 1331 (10th Cir.1979), and *U.S. v. Jones,* 707 F.2d 1169, 1171 (10th Cir.1983), "the defendant must bear a heavy burden of showing real prejudice to his case."

**5.** The same reasoning applies whether the request for severance involves co-defendants or multiple offenses charged against a single defendant. See *U.S. v. Taylor,* 800 F.2d 1012, 1017 (10th Cir.1986).

**6.** Extracts from the record quoted in Appellee's Brief, pp. 11–14 show the careful consideration given by him to the matter.

glected to pursue the matter. After four days of trial it was highly unlikely that Bailey would not be able to identify the women jurors who had been in the elevator with him or that they would have failed to recognize his presence in the elevator and would have discussed in front of him a newspaper article, in violation of the Court's repeated admonitions.

■ It was prudent for the trial judge to require more than "unverified conjecture," and to request "more specific information" [*Jones,* 707 F.2d at 1171; *Bradshaw,* 787 F.2d at 1390, 1391]. It was his duty to consider, in addition to the seriousness of the alleged impropriety, the probability or likelihood of its actual occurrence, and "the credibility of the source" [*Jones,* 707 F.2d at 1171; *Bradshaw,* 787 F.2d at 1390].

In the case at bar only the defendant himself (whose story was inherently improbable and who refused to articulate it in a specific affidavit) pointed to any possible taint from the newspaper story. [In *Thompson,* 908 F.2d at 652, "general newspaper reading was observed".]

We find no abuse of discretion and hold that the trial judge's handling of the issue was not inadequate. Under the circumstances it would not have been expedient to go further and waste time interrogating the jurors on the basis of Bailey's self-serving and virtually frivolous[7] story which he refused to put in writing as an affidavit to be filed and considered by the court.

### III

■ Nor can we find merit in Bailey's contention regarding inadequate represen-

tation by counsel. Here the standard of review is often a mixed question of law and fact depending on the totality of the circumstances of the case and the evidence included. *U.S. v. Miller,* 907 F.2d 994, 997 (10th Cir.1990). As a matter of law, under *Faretta v. California,* 422 U.S. 806, 834–36, 95 S.Ct. 2525, 2540–42, 45 L.Ed.2d 562 (1975), appellant can not claim the benefit of the inadequate representation jurisprudence to the extent that he was representing himself *pro se.*[8]

■ His claim therefore relates to action by counsel before the trial. During the pre-trial period Bailey had been represented by several attorneys, with whose views as to strategy he disagreed. He now focuses on Theodore Cannon who served as defense counsel from October 1989 to May 1990, of whom it is said: "Mr. Cannon's inability to coordinate with his client and to adequately pursue matters as reasonably desired by the client, rendered him effectively without counsel and contributed to an undermining of trust which directly resulted in him sensing a need to proceed *pro se.* He thus was effectively denied assistance of counsel."[9] This does not suffice under the jurisprudence of *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), and *U.S. v. Taylor,* 832 F.2d 1187, 1194–95 (10th Cir.1987). See also *U.S. v. Miller,* 907 F.2d 994, 1003–1004 (10th Cir.1990); and *U.S. v. Hall,* 843 F.2d 408, 413 (10th Cir.1988). Even if Cannon's views as to strategy are not accorded deference, the question is moot and the error harmless, and the prejudice to defendant required by *Strickland*[10]

---

**7.** See *U.S. v. Ramsey,* 726 F.2d 601, 604 (10th Cir.1984).

**8.** At the trial Bailey represented himself. Permission to do so was granted, after compliance with all required formalities, by Magistrate Ronald N. Boyce's order of July 16, 1990.

**9.** Appellant's Brief, p. 16.

**10.** In *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064 the Court said:
A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two

components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the results unreliable.

has not been shown, since the motions (including the motion for severance discussed in I, *supra*) which Cannon was unwilling to make on Bailey's behalf were later made by Bailey himself after he was permitted to proceed *pro se*. We find no merit in the claim of ineffective representation by counsel. No violation of the Sixth Amendment has occurred.

Accordingly, the judgment of the District Court is

AFFIRMED.